IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SANOFI-AVENTIS U.S. LLC and SANOFI )
MATURE IP, )
)
Plaintiffs, )
) C.A. No. 20-cv-804 (RGA)
v. ) CONSOLIDATED
)
ACTAVIS LLC et al., ) ███████████████
)
Defendants. ) Public Version Filed: November 3, 2020

**OPENING BRIEF IN SUPPORT OF DEFENDANT SANDOZ INC.'S
EMERGENCY MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION UNDER FED. R. CIV. P. 12(b)(1) AND
PARTIAL JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(c)**

OF COUNSEL:

BRINKS GILSON & LIONE
Mark H. Remus
Laura A. Lydigsen
Joshua H. James
455 North Cityfront Plaza Drive, Suite 3600
Chicago, Illinois 60611-5599

GOODWIN PROCTER LLP
Daryl L. Wiesen
Emily Rapalino
100 Northern Avenue
Boston, MA 02210

GOODWIN PROCTER LLP
Aviv Zalcenstein
Tiffany Mahmood
Joel Broussard
620 Eighth Avenue
New York, NY 10018

Dominick T. Gattuso (#3630)
HEYMAN ENERIO GATTUSO & HIRZEL LLP
300 Delaware Ave., Suite 200
Wilmington, DE 19801
Phone: (302) 472-7311
dgattuso@hegh.law

*Attorneys for Defendant Sandoz Inc*

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

I.       INTRODUCTION ...................................................................................................1

II.      BACKGROUND .....................................................................................................2

         A.       Overview of Orange Book-Listed Patents for Cabazitaxel.........................2

         B.       Prior Litigation: '170, '592 and '907 Patents ............................................3

         C.       Current Litigation: '110 and '777 Patents .................................................4

         D.       Sandoz Has No Plans ███████████████████
                  █████████████
                  ..........................................................................................................5

         E.       Emergency Relief Is Appropriate ...............................................................6

III.     LEGAL STANDARDS ............................................................................................7

IV.      ARGUMENT ...........................................................................................................8

         A.       Sanofi's Complaint Against Sandoz Should Be Dismissed for Lack
                  of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1) .................8

                  1.       No Subject Matter Jurisdiction Exists For Counts I And III
                           Under 35 U.S.C. § 271(e)(2)...........................................................9

                  2.       Counts I-IV Should Be Dismissed As To Sandoz Because
                           Sanofi Cannot Demonstrate An Injury In Fact As Is
                           Required For A Justiciable Article III Case Or Controversy.....................11

                           a.       Sanofi Cannot Establish a Non-Hypothetical Injury
                                    in Fact in View of Sandoz's Paragraph III
                                    Certifications.......................................................................12

                           b.       No "Actual or Imminent" Injury in Fact Exists
                                    Given Sandoz's ██████████████████████14

                  3.       Sanofi Cannot Establish A Redressable Injury For
                           Counts I-IV Sufficient For Standing In Light Of Sandoz's
                           Paragraph III Certification .........................................................17

                  4.       The Court Should Exercise Its Discretion To Deny
                           Declaratory Judgment Jurisdiction Over Counts II And IV .....................19

         B.       Counts I and III of Sanofi's Complaint Against Sandoz Should Be
                  Dismissed for Failure to State a Claim under Fed. R. Civ. P. 12(c).....................19

V.       CONCLUSION......................................................................................................21

## TABLE OF AUTHORITIES

### Cases

*Abbott Labs. v. Zenith Labs., Inc.*,
    934 F. Supp. 925 (N.D. Ill. 1995) .................................................................... 15

*Abraxis Bioscience, Inc. v. Navinta LLC*,
    No. 07-cv-1251, 2008 U.S. Dist. Lexis 63598 (D.N.J. July 31, 2008) .............. 7

*Akzona, Inc. v. E.I. Du Pont de Nemours & Co.*,
    662 F. Supp. 603 (D. Del. 1987) .................................................................... 19

*Allergan, Inc. v. Alcon Labs., Inc.*,
    324 F.3d 1322 (Fed. Cir. 2003) ....................................................................... 9

*Armstrong World Indus., Inc. v. Adams*,
    961 F.2d 405 (3d Cir. 1991) .......................................................................... 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ 8

*Asius Techs., LLC v. Sonion US, Inc.*,
    835 F. Supp. 2d 554 (N.D. Ill. 2011) ............................................................. 16

*AstraZeneca AB v. Anchen Pharms., Inc.*,
    No. 11-cv-2317, 2014 WL 2611488 (D.N.J. June 11, 2014) .................. 7, 12, 18

*AstraZeneca Pharm. LP v. Apotex Corp.*
    669 F.3d 1370 (Fed. Cir. 2012) ..................................................................... 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 8

*Cat Tech LLC v. TubeMaster, Inc.*,
    528 F.3d 871 (Fed. Cir. 2008) ....................................................................... 15

*Eisai Co. v. Mut. Pharm. Co.*,
    No. 06-cv-3613, 2007 WL 4556958 (D.N.J. Dec. 20, 2007) ...................... 10, 15

*Eli Lilly & Co. v. Medtronic, Inc.*,
    496 U.S. 661 (1990) .................................................................................. 10, 11

*GAF Bldg. Materials Corp. v. Elk Corp.*,
    90 F.3d 479 (Fed. Cir. 1996) ........................................................................ 17

*Gould Elecs. Inc. v. United States*,
    220 F.3d 169 (3d Cir. 2000) ........................................................................ 7, 8

*H. Lundbeck A/S v. Apotex Inc.*,
    No. 18-cv-88, 2020 WL 3507795 (D. Del. June 26, 2020) ....................... 13, 20

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ................................................................. 8

*In re Rosuvastatin Calcium Patent Litig.*,
    No. 08-cv-1949, 2008 U.S. Dist. Lexis 96289 (D. Del. Nov. 24, 2008) ............ 16

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................... 7, 11, 14, 17

*Matthews Int'l, Corp. v. Biosafe Eng'g, LLC*,
    No. 11-269, 2011 WL 4498935 (W.D. Pa. Sept. 27, 2011), *aff'd*, 695 F.3d
    1322 (Fed. Cir. 2012) ........................................................................ 16, 19

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) .................................................................... 9, 12, 14

*Mortensen v. First Fed. Savings & Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977) ................................................................. 7

*Novo Nordisk, Inc. v. Mylan Pharms., Inc.*,
    No. 09-cv-2445, 2010 WL 1372437, at *9 (D.N.J. Mar. 31, 2010) .................. 15

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993) ............................................................... 8

*Sandoz Inc. v. Amgen Inc.*,
    773 F.3d 1274 (Fed. Cir. 2014) ............................................................ 15

*Sanofi v. Lupin Atlantis Holdings SA*,
    No. 15-cv-415, 2017 U.S. Dist. Lexis 10653 (D. Del. Jan. 26, 2017) ............... 13

*Sanofi-Aventis U.S. LLC, et al v. Fresenius Kabi USA, LLC*,
    No. 3:14-cv-07869 (D.N.J.) .................................................................. 3

*Sanofi-Aventis U.S., LLC v. Dr. Reddy's Labs., Inc.*,
    933 F.3d 1367 (Fed. Cir. 2019) ......................................................... 4, 14

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ....................................................................... 17

*Susquehanna Valley All. v. Three Mile Island Nuclear Reactor*,
    619 F.2d 231 (3d Cir. 1980) ............................................................... 10

*Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*,
    982 F.2d 1520 (Fed. Cir. 1992) ............................................................ 15

*Turbe v. Gov't of Virgin Islands*,
    938 F.2d 427 (3d Cir. 1991) ................................................................. 8

*Vanda Pharmaceuticals v. West-Ward Pharmaceuticals*,
    887 F.3d 1117 (Fed. Cir. 2018) ............................................................ 11

**<u>Statutes</u>**

21 U.S.C. § 355 ............................................................................................ 1, 6, 12

35 U.S.C. § 271 ................................................................................................ passim

**<u>Rules</u>**

Fed. R. Civ. P. 12(b) .............................................................................. 7, 8, 9, 10

Fed. R. Civ. P. 12(c) ................................................................................. 8, 10, 19

**<u>Regulations</u>**

C.F.R. 314.170 ...................................................................................................... 6

## I.      INTRODUCTION

Sanofi's First Amended Complaint (D.I. 62) should be dismissed without prejudice as to Sandoz because Sanofi faces three insurmountable obstacles to establishing that a justiciable Article III case or controversy exists as to Sandoz.  Sanofi's complaint contains four counts:

- Count I:  Infringement of U.S. Patent No. 10,583,110 ("'110 patent") under 35 U.S.C. § 271(e)(2);
- Count II: Declaratory Judgment of Infringement of the '110 patent under 35 U.S.C. § 271(b);
- Count III: Infringement of U.S. Patent No. 10,716,777 ("'777 patent") under 35 U.S.C. § 271(e)(2); and
- Count IV: Declaratory Judgment of Infringement of the '777 patent under 35 U.S.C. § 271(b).

First, Sanofi's Counts I and III alleging infringement under 35 U.S.C. § 271(e)(2) should be dismissed because certification under 21 U.S.C. § 355(j)(2)(vii)(IV) ("Paragraph IV certification") is necessary to invoke jurisdiction under section 271(e)(2) and Sandoz has never submitted a Paragraph IV certification for these patents.

Second, there is no subject matter jurisdiction over any of the counts because Sandoz submitted a certification under 21 U.S.C. § 355(j)(2)(vii)(III) ("Paragraph III certification") for the '110 and '777 patents.  In these certifications, Sandoz certifies that it is ***not seeking FDA approval to market its ANDA product before the expiration of the '110 and '777 patents***.  As a result, Sanofi cannot demonstrate an injury sufficient for standing because the FDA cannot approve Sandoz's 505(b)(2) product until after the '110 and '777 patents expire.

Third, Sandoz 

Even assuming the stars align for Sandoz (and they may not),

1

███████████████████████████████████████████████

This hypothetical, remote possibility does not create the concrete and imminent injury necessary for Article III standing. All of Sanofi's counts for infringement (Counts I-IV) must be dismissed for lack of subject matter jurisdiction on this basis alone.

Plaintiffs have refused to dismiss Sandoz because they are already pursuing allegations of infringement for the '110 and '777 patents against other companies and would like to adjudicate their claims against Sandoz at the same time. But Plaintiffs' purported convenience is not a reason to litigate claims that are hypothetical and speculative.[1] Sandoz has ████████ has submitted Paragraph III certifications for the patents-in-suit. It should not be a party to this case.

## II.   BACKGROUND

### A.   Overview of Orange Book-Listed Patents for Cabazitaxel

This consolidated Hatch-Waxman litigation concerns efforts by several companies, including Sandoz, to bring a lower-priced version of the chemotherapy drug, Jevtana®, to market. Sanofi and its affiliates hold the five patents that are currently listed in the Orange Book in connection with Jevtana® and its active pharmaceutical ingredient, cabazitaxel:

| Patent No. | Patent Expiration[2] | General Description of Subject Matter | Sandoz's Certification |
|---|---|---|---|
| 5,847,170 ("'170 patent") | Sep. 26, 2021 | Compound cabazitaxel and methods for making cabazitaxel | Paragraph III |
| 7,241,907 ("'907 patent") | Jun. 10, 2026 | Acetone solvate of cabazitaxel and methods for making it | Paragraph III |

---

[1] Sandoz has no desire to burden the parties or Court with duplicative litigation. ████████

████████████████████████████████████████████████████

████████████   Ex. 5, 9/29, 10/12, and 10/20 Emails Lyd. to Sol. "Ex. _" refers to the exhibits to the Declaration of Laura A. Lydigsen, attached herewith.

[2] Expiration dates as reported in the Orange Book are listed. Where the FDA has granted an extra six months pediatric exclusivity ("PED"), the expiration of the PED is listed.

| 8,927,592 ("'592 patent") | Apr. 27, 2031 | Methods of treating a patient with prostate cancer with cabazitaxel | Paragraph IV |
| 10,583,110 ("'110 patent") | Oct. 27, 2030 | Methods of treating a patient with prostate cancer with cabazitaxel | Paragraph III |
| 10,716,777 ("'777 patent") | Oct. 27, 2030 | Methods of treating a patient with prostate cancer with cabazitaxel | Paragraph III |

Ex. 6, Current Orange Book Listing.

### B.    Prior Litigation: '170, '592 and '907 Patents

This is not the first litigation between Sanofi and Sandoz concerning cabazitaxel.  In

September 2016, Sanofi sued Sandoz in the District of New Jersey in Civil Action No. 3:16-cv-

5678, alleging that Sandoz's New Drug Application No. 208715 ("Sandoz's 505(b)(2)

Application") infringed the '170 and '592 patents.  D.I. 62, ¶¶ 94-95; Ex. 7, NJ Compl.  Sandoz

filed a declaratory judgment claim for the '907 patent, and Sanofi responded by providing

Sandoz with a ███████████████ agreeing to dismissal of the '907 patent.  Exs. 8-9, NJ

Ans. & Dismissal.  The parties then agreed to stay the action as to Sandoz and that they would be

bound by the judgment in another earlier-filed case pending in New Jersey in which Sanofi had

sued several other generic drug companies for allegedly infringing the '170 and '592 patents:

*Sanofi-Aventis U.S. LLC, et al v. Fresenius Kabi USA, LLC*, No. 3:14-cv-07869 (D.N.J.) ("NJ

Lead Case").  Ex. 10, Stip & Stay; D.I. 62, ¶ 109.

In 2017, Judge Shipp issued an 83-page opinion and accompanying order holding that the

asserted claims of the '170 patent were not invalid and infringed and that the asserted claims of

the later-expiring '592 patent were invalid.  Exs. 11-12, NJ Op. & Order; D.I. 62, ¶¶ 111-12.

Anticipating an unfavorable decision on the '592 patent, shortly before Judge Shipp's decision,

Sanofi disclaimed the vast majority of the asserted claims of the '592 patent (claims 7, 11, 14-16,

and 26).  Sanofi did not appeal the judgment of invalidity as to the remaining asserted claims of

the '592 patent that were not disclaimed (claims 21 and 30).  Ex. 13, Sanofi Br. at 18, 38-39.

On August 14, 2019, the Federal Circuit affirmed the judgment in favor of Sanofi as to the '170 patent, but vacated the judgment on the '592 patent for the disclaimed claims due to lack of subject matter jurisdiction in view of Sanofi's disclaimer of the appealed patent claims. *Sanofi-Aventis U.S., LLC v. Dr. Reddy's Labs., Inc.*, 933 F.3d 1367, 1373-75, 1380 (Fed. Cir. 2019); D.I. 62, ¶ 113.  Based on Sanofi's disclaimer and Judge Shipp's invalidation of the asserted claims of the '592 patent, Sandoz and the other companies involved in the NJ Lead Case will not be blocked by the '592 patent from marketing their cabazitaxel products.  Once the '170 patent expires in September 2021, the injunction against Sandoz and the other generics in the NJ Lead Case will also expire.  Ex. 14, Injunction; D.I. 1, ¶ 195.

### C.    Current Litigation: '110 and '777 Patents

Sanofi has fought hard to extend its monopoly on cabazitaxel beyond the expiration of the '170 patent in September 2021 notwithstanding the setbacks dealt to it by the District of New Jersey on the '592 patent.  These efforts included Sanofi's pursuit of a series of continuation patent applications to the '592 patent, two of which issued as the '110 and '777 patents on March 10 and July 21, 2020, respectively.  Like the '592 patent, these patents claim methods of using cabazitaxel to treat prostate cancer.  Plaintiffs attempt to distinguish the '110 and '777 patents' claims from the '592 patent claims already held invalid by pointing to their recitation of a "method of increasing survival" in a patient with prostate cancer rather than "a method of treating prostate cancer."  D.I. 62, ¶¶ 123, 125.  Each patent also adds limitations pertaining to pre- or co-administration with other drugs commonly used in this type of chemotherapy.  *See id.*

On June 12, 2020, Sanofi filed a new suit alleging infringement of the '110 patent against Sandoz and numerous other companies that had been involved in the NJ Lead Case years earlier. D.I. 1.  Rather than filing the new suit in New Jersey where Judge Shipp had already evaluated the related '592 patent, Plaintiffs filed suit in this Court.  The present action was subsequently

consolidated with several others already pending against a few companies that had submitted

Paragraph IV certifications for the '110 patent.  Nos. 1:20-cv-803 (Accord); No. 1:20-cv-646

(MSN); No. 1:20-cv-761 (Mylan).  Plaintiffs' complaint makes no allegation that Sandoz has

ever submitted a Paragraph IV certification for the '110 patent.  D.I. 62, ¶¶ 92-102, 126-37.  And

with good reason.  Sandoz did not and has never submitted a Paragraph IV certification for the

'110 patent.  Ex. 15, Patent Cert.

Sanofi subsequently filed a First Amended Complaint against Sandoz adding allegations

of infringement of the '777 patent.  D.I. 62, ¶¶ 149-71.  Specifically, Sanofi alleges direct

infringement of the '777 patent under 35 U.S.C. § 271(e) (*id.* at ¶¶ 149-60) and also included a

count for declaratory judgment of infringement of the '777 patent under 35 U.S.C. § 271(b)  (*id.*,

¶¶ 161-71).  Like the '110 patent, Plaintiffs' complaint omits any allegation that Sandoz has ever

submitted a Paragraph IV certification for the '777 patent.  D.I. 62, ¶¶ 149-60.

Based on the September 2021 expiration of the '170 compound patent and, with it, the

New Jersey injunction, Plaintiffs sought and obtained an accelerated schedule in this case.  D.I.

29.  Trial is set to begin on May 24, 2021, less than one year after Sanofi sued Sandoz.  D.I. 66.

**D.**     **Sandoz Has No Plans** ████████████████████████████████

On June 11, 2020, Sandoz received an unusual letter ██████████████████



While Sandoz currently has tentative FDA

approval for its 505(b)(2) product (D.I. 62, ¶ 96), █████████████████████████

████████████████████████████████████



In recognition of the uncertainty that it may ███████████████████████████ ████████ Sandoz has submitted Paragraph III certifications for both the '110 and '777 patents. Sandoz also converted to Paragraph III for all of the earlier-expiring Orange Book-listed patents, including the '170 patent and '907 patent.  Ex. 15, Patent Cert.  Pursuant to Sandoz's Paragraph III certifications, the FDA cannot approve Sandoz's ANDA until the '110 and '777 patents expire in October 2030.  *See* 21 U.S.C. § 355(j)(2)(vii)(III).

On October 12, 2020, ████████████████████████████████████████████ ████████  In response, Sanofi pointed to Sandoz's Paragraph IV certifications.  Ex. 5, 10/15 Email Sol. to Lyd.  Accordingly, Sandoz promptly informed Sanofi of its Paragraph III certifications for all of the Orange Book-listed patents except the '592 patent, which was previously litigated and expires later than the others.  Ex. 5, 10/20 Email Lyd. to Sol.  Despite the lack of any case or controversy as to Sandoz, Sanofi has refused to dismiss the suit.  *Id.*

### E.   Emergency Relief Is Appropriate

Sanofi filed the present suit and sought an expedited schedule during the same time period that Sandoz was █████████████████████████████████  D.I. 1, Compl. (filed Jun. 12, 2020); Ex. 4, June 11, 2020 Letter; D.I. 29.  Since learning of the issue, Sandoz worked diligently█████████████████████████████████  On Thursday, September 24, Sandoz convened a special meeting during which it determined ████████████

████████████████████████████████████████████████████

████████████████████████████   Seitz Decl. ¶¶ 6-8.  Sandoz promptly contacted Plaintiffs' counsel

on Tuesday, September 29, ███████████████████████████████████ that would avoid

unnecessarily wasting the Court's and the parties' resources on expedited litigation over ██

██████████████████   Ex. 5, 9/29 Email Lyd. to Sol.  After a month of negotiations, the parties

have been unable to reach an agreement.  Sandoz is seeking emergency relief because the

expedited schedule in this case likely will not otherwise result in a decision before the fast-

approaching May 24, 2021 trial date in this matter.  D.I. 66.

## III.   LEGAL STANDARDS

Under Rule 12(b)(1), a case must be dismissed where the Court lacks subject-matter

jurisdiction.  Fed. R. Civ. P. 12(b)(1).  At all times, the plaintiff has the burden of proof that

jurisdiction does in fact exist.  *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891

(3d Cir. 1977).  "Challenges to jurisdiction under Rule 12(b)(1) may be either facial or factual."

*AstraZeneca AB v. Anchen Pharms., Inc.*, No. 11-cv-2317, 2014 WL 2611488, at *3 (D.N.J. June

11, 2014) (citation omitted).  A facial attack challenges the sufficiency of the pleadings, but a

court reviewing a factual challenge "may consider evidence outside the pleadings."  *Gould Elecs.*

*Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  "The party invoking federal jurisdiction

bears the burden of establishing [the] elements" required for jurisdiction.  *Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 561 (1992).  "When considering a motion to dismiss for lack of subject

matter jurisdiction under Rule 12(b)(1), a court attaches 'no presumptive truthfulness' to the

allegations of the non-moving party, and 'the existence of disputed material facts will not

preclude the trial court from evaluating for itself the merits of jurisdictional claims.'"  Ex. 16,

*Abraxis Bioscience, Inc. v. Navinta LLC*, No. 07-cv-1251, 2008 U.S. Dist. Lexis 63598, at *6

(D.N.J. July 31, 2008) (citation omitted).

In the Third Circuit, Rule 12(c) motions are subject to the same standards as Rule 12(b)(6) motions. *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Under Rule 12(b)(6), a complaint that "fail[s] to state a claim upon which relief can be granted" must be dismissed. Fed. R. Civ. P. 12(b)(6). The moving party bears the burden of showing that the complaint fails to state a claim. *Gould Elecs.*, 220 F.3d at 178. In reviewing a motion filed under Fed. R. Civ. P. 12(b)(6), the Court must assume that all factual allegations in the complaint are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Legal conclusions "must be supported by factual allegations" and "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6) (or Rule 12(c), a court may consider the pleadings, exhibits attached to the pleadings, matters of public record, and any documents "integral to or explicitly relied upon" in the pleadings. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

## IV.     ARGUMENT

### A.     Sanofi's Complaint Against Sandoz Should Be Dismissed for Lack of Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1)

Neither of the two bases for subject matter jurisdiction identified in Sanofi's complaint is valid here where Sandoz has submitted Paragraph III certifications for the two patents-in-suit and

Sanofi cannot demonstrate that subject matter jurisdiction exists for its Counts I and III alleging infringement of the '110 and '777 patent under 35 U.S.C. § 271(e) where Sandoz has not

submitted a Paragraph IV certification—a necessary predicate to invoke jurisdiction under section 271(e).  Second, no case or controversy exists as to any count alleging infringement of the '110 and '777 patents, including Counts II and IV alleging infringement under the Declaratory Judgment Act, because there is no dispute of "sufficient immediacy and reality" here where Sandoz ███████████  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted).  One thing is certain about Sandoz's 505(b)(2) product:███████ ████████████████████████████████████████  As such, Sanofi's complaint for infringement of the '110 and '777 patents should be dismissed as to Sandoz under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

      1.     **No Subject Matter Jurisdiction Exists For Counts I And III Under 35 U.S.C. § 271(e)(2)**

The Court lacks subject matter jurisdiction over Counts I and III, which rely on 35 U.S.C. § 271(e)(2) as their underlying jurisdictional basis to allege infringement of the '110 and '777 patents, because Sandoz has never filed Paragraph IV certifications for these two patents, as is required for a cognizable claim for infringement under 35 U.S.C. § 271(e)(2).

A Paragraph IV certification is a necessary prerequisite to invoke jurisdiction under section 271(e)(2).  *See Allergan, Inc. v. Alcon Labs., Inc.*, 324 F.3d 1322, 1330 (Fed. Cir. 2003). The Supreme Court has observed that § 271(e)(2) "define[s] a new (and somewhat artificial) act of infringement for a very limited and technical purpose that relates only to certain drug applications" containing a Paragraph IV certification:

> [The Hatch-Waxman] scheme will not work, of course, if the holder of the patent pertaining to the pioneer drug is disabled from establishing in court that there has been an act of infringement. . . . Thus, an act of infringement had to be created for these ANDA and paper NDA proceedings. That is what is achieved by § 271(e)(2)—the creation of a highly artificial act of infringement that consists of submitting an ANDA or a paper NDA containing the ***fourth type of certification*** that is in error as to whether commercial manufacture, use, or sale of the new drug (none of which, of course, has actually occurred) violates the relevant patent.

*Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 676, 678 (1990) (emphasis added).  Thus, the

Supreme Court "ha[s] read § 271(e)(2) to require an ANDA [or 505(b)(2) application] with a

Paragraph IV certification against a listed patent."  *Eisai Co. v. Mut. Pharm. Co.*, No. 06-cv-

3613, 2007 WL 4556958, at *11-12 (D.N.J. Dec. 20, 2007).[3]

No jurisdiction exists here because Sandoz has submitted Paragraph III certifications for

the '110 and '777 patents—not Paragraph IV certifications.  Pursuant to Sandoz's Paragraph III

certifications, the FDA cannot approve Sandoz's 505(b)(2) application before the expiration of

those patents, as is required for a cognizable claim of infringement under 35 U.S.C. § 271(e)(2).

Section 271(e)(2)(A) provides in relevant part:

> It shall be an act of infringement to submit . . . an [ANDA] . . . for a drug claimed in a patent or the use of which is claimed in a patent . . . ***if the purpose of such submission is to obtain approval*** . . . to engage in the commercial manufacture, use, or sale of a drug, . . . claimed in a patent or the use of which is claimed in a patent ***before the expiration of such patent***.

35 U.S.C. § 271(e)(2) (emphases added).  Sandoz's Paragraph III certifications for the '110 and

'777 patents state that Sandoz seeks final approval only "upon expiration of" these patents.  Ex.

15, Patent Cert.  This means that, as a matter of law, the FDA cannot grant final approval to

Sandoz's 505(b)(2) application "before the expiration of such patent[s]" as is required for a claim

under section 271(e)(2).  35 U.S.C. § 271(e)(2) (second emphasis above); 21 U.S.C.

§ 355(2)(vii)(III).

---

[3] In *AstraZeneca Pharm. LP v. Apotex Corp.*, the Federal Circuit held that counts alleging infringement of method patents for which the ANDA filers had submitted section viii statements should have been dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6), rather than lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  669 F.3d 1370, 1381 (Fed. Cir. 2012).  The Federal Circuit has not yet decided whether dismissal based on Paragraph III certification should be for lack of jurisdiction under Rule 12(b)(1) or failure to state a claim under Rule 12(b)(6)/12(c).  Whether the Court dismisses Counts I and III here pursuant to 12(b)(1) or 12(c), the same analysis applies.  *Id.*; *Susquehanna Valley All. v. Three Mile Island Nuclear Reactor*, 619 F.2d 231, 239 (3d Cir. 1980).

The stark difference in facts between this case and Federal Circuit Hatch-Waxman

decisions finding jurisdiction highlights the lack of jurisdiction here.  For example, in *Vanda*

*Pharmaceuticals v. West-Ward Pharmaceuticals*, 887 F.3d 1117 (Fed. Cir. 2018), the Federal

Circuit found jurisdiction because the parties were already litigating the RE'198 patent, which

was the subject of a Paragraph IV certification by West-Ward, when Vanda filed a new suit to

add the '610 patent.  *Id.* at 1122, 1125.  The '610 patent was subsequently listed in the Orange

Book and West-Ward submitted a Paragraph IV certification for it.  *Id.* at 1122.  Given the

indisputably proper pre-existing litigation between the parties over the RE'198 patent and West-

Ward's Paragraph IV certifications for both patents, it is unsurprising that the court found subject

matter jurisdiction.  By contrast, Sandoz has never submitted Paragraph IV certifications for

either patent-in-suit and the facts supporting jurisdiction in *Vanda* simply are not present here.

In sum, Sandoz's Paragraph III certifications do not provide the jurisdictional hook that

would otherwise exist under § 271(e)(2) for a Paragraph IV certification, and thus the Court

lacks subject matter jurisdiction and should dismiss Counts I and III of Sanofi's Complaint on

this basis alone.  *See Eli Lilly*, 496 U.S. at 678.

> **2.  Counts I-IV Should Be Dismissed As To Sandoz Because Sanofi
> Cannot Demonstrate An Injury In Fact As Is Required For A
> Justiciable Article III Case Or Controversy**

It is well established that "standing is an essential and unchanging part of the case-or-

controversy requirement of Article III."  *Lujan*, 504 U.S. at 560.  The "irreducible constitutional

minimum of standing" requires demonstration of several elements, including an "injury in fact,"

which the Supreme Court defines as "an invasion of a legally protected interest which is (a)

concrete and particularized . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical.'"

*Id.* at 560.  This constitutional injury in fact requirement is the same under both *Lujan* and the

Declaratory Judgment Act, which Sanofi's Counts II and IV invoke as their purported

jurisdictional basis.  *See MedImmune*, 549 U.S. at 127 ("[T]he phrase 'case of actual controversy in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III.").  Accordingly, all of Sanofi's counts alleging infringement of the '110 and '777 patents (Counts I-IV) should be dismissed here where Sanofi cannot meet its burden of establishing an imminent, non-hypothetical injury-in-fact as to these two patents.

> **a.      Sanofi Cannot Establish a Non-Hypothetical Injury in Fact in View of Sandoz's Paragraph III Certifications**

Sanofi's alleged injuries flow from Sandoz's submission of a 505(b)(2) application seeking FDA approval "***prior to*** the expiration of the '110 [and '777] patent[s]."  D.I. 62, ¶¶ 127 (Count I), 139 (I), 151 (III), 162 (IV).   However, Sandoz's submission of Paragraph III certifications for the '110 and '777 patents negates Sanofi's alleged injuries.  Under 21 U.S.C. § 355(j)(2)(A)(vii)(III), (5)(B)(ii), a Paragraph III certification requests approval as "of the date on which [the] patent ***will expire***" (emphasis added).  Sandoz has submitted such a Paragraph III certification for the '110 and '777 patents and is thus ***not*** seeking approval of its ANDA before those patents will expire.  As such, Sanofi's purported injury—that Sandoz is seeking approval for the commercial manufacture of Sandoz's 505(b)(2) product "prior to" the expiration of Sanofi's patents—does not exist and there is no injury in fact.  Accordingly, Counts I-IV should be dismissed as to Sandoz for lack of subject matter jurisdiction.

*AstraZeneca AB v. Anchen Pharms. Inc.* is on point.  There, the court dismissed a Hatch-Waxman suit for lack of subject matter jurisdiction where Anchen had converted from Paragraph IV to III.  2014 WL 2611488, at *4-5.  The possibility of Anchen converting its certifications back to Paragraph IV at a later date did not alter the court's conclusion.  *Id.* at *5.

There is nothing here that would warrant making an exception to the general rule that no case or controversy exists to adjudicate patent infringement where a generic has submitted Paragraph III certifications for the patents-in-suit.  Such exceptions have been made only where

a generic starts with a Paragraph IV certification that establishes initial jurisdiction, converts to Paragraph III, and fails to meet its burden of demonstrating the conversion moots the controversy.  *See, e.g.*, Ex. 17, *Sanofi v. Lupin Atlantis Holdings SA*, No. 15-cv-415, 2017 U.S. Dist. Lexis 10653, at *4-5 (D. Del. Jan. 26, 2017) ("[I]t is sufficient that the case was initially certified under Paragraph IV."); *H. Lundbeck A/S v. Apotex Inc.*, No. 18-cv-88, 2020 WL 3507795, at *4 (D. Del. June 26, 2020) ("[T]he Court's jurisdiction did not disappear when Sandoz converted its Paragraph IV certifications to Paragraph III certifications.").  By contrast, Sandoz has **never** submitted a Paragraph IV certification for either patent-in-suit.  Exs. 15, 18, Patent Certs.  Thus, there has never been a case or controversy with respect to these patents.

*Sanofi* differs from the present case for the additional reason that, in that case, Sandoz's Paragraph IV certifications for other contemporaneously-expiring patents suggested to the Court that Sandoz would file a new Paragraph IV certification for the patent in suit.  In *Sanofi*, the Court had issued a judgment in 2016 enjoining Sandoz from infringing two patents listed in the Orange Book for Sanofi's Multaq®.  A second case involving a third, related patent for Multaq® was also pending before the Court, but on a later schedule due to the fact that the third patent was not listed in the Orange Book until the first case was near trial.  *Id.* at *2-3.  After unsuccessfully seeking to stay the second case pending the outcome of the appeals in the first case, Sandoz converted to Paragraph III on the third patent and sought dismissal of the second case.  *Id.* at *3.  In denying Sandoz's motion, the Court was persuaded that Sandoz might submit a new Paragraph IV certification, noting that "Sandoz's pursuit of the appeal is compelling evidence of its desire to pursue launch of its generic product long before 2029."  *Id.* at *8 n.3.

No such facts exist here.  Sanofi cannot point to a Paragraph IV certification for any other Orange Book-listed patent for cabazitaxel that might suggest that Sandoz plans to bring a product to market prior to the expiration of the '110 and '777 patents.  Sandoz previously certified under

Paragraph IV for the '907, '170, and '592 patents, but no case or controversy exists as to these

three patents: Sanofi has ████████████ Sandoz for the '907 patent (Ex. 9, NJ Dismissal,

D.I. 14, 28-29); Sandoz has already been enjoined with respect to the '170 patent with no further

appeals possible (*Sanofi*, 933 F.3d at 1380); and the relevant claims of the '592 patent have

either been held invalid or disclaimed by Sanofi (Exs. 11-12, NJ Op. & Order; D.I. 62, ¶¶ 111-

12).  If this were not enough to eliminate any case or controversy (and it is), Sandoz has also

converted to Paragraph III for the '907 and '170 patents.  Ex. 15, Patent Cert.

> **b.   No "Actual or Imminent" Injury in Fact Exists Given** ████████

████████████████   provides yet another reason why Plaintiffs cannot

demonstrate the requisite injury in fact for a justiciable case or controversy.  The Supreme Court

has made clear that an injury must be "actual or imminent, not 'conjectural' or hypothetical'" for

standing.  *Lujan*, 504 U.S. at 560.  Where a party seeks declaratory relief as Sanofi does here,

this means that the dispute must have "sufficient immediacy and reality to warrant the issuance

of a declaratory judgment."  *MedImmune*, 549 U.S. at 127.  Neither requirement is met here.

First, Plaintiffs' allegations that Sandoz's 505(b)(2) product infringes the '110 and '777

patent fail to meet the requirement for an "imminent" or "immediate" injury given ████████

████████   Seitz Decl. ¶¶ 5-7.  ████████████████

████████████   *Id.* at ¶ 6.  Even if Sandoz were ████████████   which

is unlikely, Sandoz anticipates that it would take ████████████

████████████████████   Moreover,

the process could take significantly longer.  *Id.* at ¶ 8.  ████████████

████████████████   years from now is just the

type of remote, hypothetical dispute that the courts have held does not meet the case or

controversy requirement.  *See, e.g.*, *Sandoz Inc. v. Amgen Inc.*, 773 F.3d 1274, 1278-79 (Fed.

Cir. 2014) (affirming dismissal for lack of subject matter jurisdiction where Sandoz's drug application filing, "let alone any FDA approval, was several years away"); *Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1527 (Fed. Cir. 1992) (finding no case or controversy where an accused medical device "had only recently begun clinical trials, and was years away from potential FDA approval").

In fact, Courts have frequently held that, absent a Paragraph IV certification, an ANDA without FDA approval does not give rise to a sufficiently immediate injury for subject matter jurisdiction. "[A] controversy will only materialize if the FDA approves the accused drug and if Defendant[s] decide[] to market the drug." *Abbott Labs. v. Zenith Labs., Inc.*, 934 F. Supp. 925, 939 (N.D. Ill. 1995); *see also Eisai*, 2007 WL4556958, at *18; *Novo Nordisk, Inc. v. Mylan Pharm., Inc.*, No. 09-cv-2445, 2010 WL 1372437, at *9 (D.N.J. Mar. 31, 2010) ("Because a generic-drug manufacturer has not yet placed the drug into the market when it files an ANDA application, a patent-holder cannot make a claim for patent infringement under § 271(a)."). The allegations of infringement here are even less immediate given that Sandoz's prior tentative approval of its 505(b)(2) Application ████████████████████████████████████ ████████████████████████████████████████████

Second, the dispute between Sanofi and Sandoz fails to meet the requirement for a sufficient reality here where ████████████████████████████████ is uncertain. "[T]he reality requirement is often related to the extent to which the technology in question is 'substantially fixed' as opposed to 'fluid and indeterminate' at the time declaratory relief is sought." *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 882 (Fed. Cir. 2008). Here, the technology in question is not "substantially fixed" as Sandoz ██████████████████████████████████████ ████████████████████████████████ Sandoz's product is not substantially fixed for the additional reason that Sandoz may continue to revise its product labeling—as it has already done

several times since filing its NDA.  Ex. 19, Label Submissions.  Courts have held that the reality

requirement was not met in similar circumstances where the features of an allegedly infringing

product were "variable," and therefore, "fluid and indeterminate."  *Matthews Int'l, Corp. v.*

*Biosafe Eng'g, LLC*, No. 11-cv-269, 2011 WL 4498935, at *8 (W.D. Pa. Sept. 27, 2011), *aff'd*,

695 F.3d 1322 (Fed. Cir. 2012) (because the parameters of defendant's allegedly infringing

device were not settled, "th[e] suit lacks the necessary reality to satisfy the constitutional

requirements for declaratory judgment jurisdiction"); *see also Asius Techs., LLC v. Sonion US,*

*Inc.*, 835 F. Supp. 2d 554, 562 (N.D. Ill. 2011) ("[T]he final product may differ substantially

from the prototypes that Asius demonstrated to Siemens. . . . Asius has failed to show

meaningful preparation to conduct potentially infringing activity.").  Because Sandoz does not

have a "substantially fixed" product on which Sanofi can base its infringement allegations, the

reality requirement for a justiciable case or controversy is not met.

Third, the lack of a sufficiently immediate and real dispute is compounded by Sandoz's

Paragraph III certifications. ███████████████████████ presents multiple

uncertainties: ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████ On top of these myriad uncertainties, Plaintiffs' alleged future acts

of infringement will only occur if Sandoz also chooses to file new Paragraph IV certifications for

the '110 and '777 patents.  "Declaratory judgment jurisdiction may not be predicated on pure

speculation."  Ex. 20, *In re Rosuvastatin Calcium Patent Litig.*, No. 08-cv-1949, 2008 U.S. Dist.

Lexis 96289, at *48 n.12 (D. Del. Nov. 24, 2008).  Given the many contingencies here, the

possibility of Sandoz bringing its 505(b)(2) product to market in the United States prior to the

expiration of the '110 and '777 patents is just that—speculation.

The fact that other companies may potentially launch generic versions of cabazitaxel upon expiration of the '170 patent in September 2021[4] does not mean that there is a case or controversy as to Sandoz.  The existence of subject matter jurisdiction is a party-specific inquiry determined by the facts at the time the complaint was filed.  *GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479, 483 (Fed. Cir. 1996).  Here, there is no immediate and real dispute as to Sandoz and dismissal is appropriate.

### 3.    Sanofi Cannot Establish A Redressable Injury For Counts I-IV Sufficient For Standing In Light Of Sandoz's Paragraph III Certification

Sanofi's infringement allegations against Sandoz fail another requirement for an Article III case or controversy: redressability.  *Lujan*, 504 U.S. at 560-61.  In addition to a concrete injury, in order to establish standing, Sanofi must also show that its injury "is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Sanofi cannot meet its burden to show that any of its alleged injuries, i.e., future infringement of the '110 and '777 patents, is "likely to be redressed by a favorable judicial decision" because no remedies are available other than what Sanofi has already achieved by virtue of Sandoz's Paragraph III certifications for those patents.  Counts I and III seek relief for infringement under 35 U.S.C. § 271(e)(2).  Section 271(e)(4)(A)-(C) define the "only remedies which may be granted by a court for an act of infringement" based on a 505(b)(2) submission:

(A) the court shall order the effective date of any approval of the drug . . . involved in the infringement to be a date which is ***not earlier than the date of the expiration of the patent which has been infringed***,

---

[4] Sandoz takes no position as to whether the dispute between Sanofi and the other defendants meets the requirements for an Article III case or controversy.

(B) injunctive relief may be granted against an infringer to prevent the commercial manufacture, use, offer to sell, or sale within the United States or importation into the United States of an approved drug . . . ,

(C) damages or other monetary relief may be awarded against an infringer only if there has been commercial manufacture, use, offer to sell, or sale within the United States or importation into the United States of an approved drug . . . .

35 U.S.C. § 271(e)(4) (emphasis added).  As emphasized above, "the remedy for a prevailing plaintiff [in a Hatch-Waxman case] is an injunction delaying approval of a defendant's ANDA *until expiration of all listed Orange Book patents*.[5]  *AstraZeneca AB*, 2014 WL 2611488, at *5 (emphasis added).  Pursuant to Sandoz's Paragraph III certifications, the FDA cannot grant final approval to Sandoz's 505(b)(2) application until the '110 and '777 patents expire and thus there is no further relief that the Court can grant and no redressible injury.

Plaintiffs' counts for infringement under the Declartory Judgment Act (Counts II and IV) suffer from the same lack of a redressable injury.  For its declaratory judgment counts, Sanofi seeks a permanent injunction prohibiting Sandoz "from engaging in the commercial manufacture, use, offer for sale, or sale within the United States, or importation into the United States" of its 505(b)(2) product "until the expiration of the '110 [and '777] patent[s]."  D.I. 62, ¶¶ 148 (Count II), 171 (Count IV), Prayer for Relief, ¶¶ C, G.  But Sandoz is effectively already enjoined by virtue of its Paragraph III certifications, which preclude the FDA from granting the final approval necessary for Sandoz to engage in the commercial manufacture, use, offer for sale, or sale within the United States, or importation into the United States of its 505(b)(2) product prior to patent expiration.

---

[5] Section 271(e)(4)(C) does not apply because it allows for monetary relief "only if there has been commercial manufacture, use, offer to sell, or sale," etc., before patent expiration.

### 4.     The Court Should Exercise Its Discretion To Deny Declaratory Judgment Jurisdiction Over Counts II And IV

To the extent the Court finds that there is a sufficient case or controversy to support jurisdiction over Counts I-IV, it should nevertheless: (i) dismiss Counts I and III because they do not state a cognizable section 271(e)(2) claim for the reasons stated in Section IV.A.1; and (ii) decline to exercise declaratory judgment jurisdiction over Counts II and IV, which assert infringement under the Declaratory Judgment Act.

The Court has significant discretion in determining whether or not to exercise declaratory judgment jurisdiction over Sanofi's "possible" infringement claims set out in Counts I and IV. *See Matthews*, 695 F.3d at 1328 n.3.  Plaintiffs are not invoking the Declaratory Judgment Act because of any real fear that Sandoz may launch a competing product prior to expiration of the '110 and '777 patents.  Sandoz has given Plaintiffs documentation of ███████████ and its Paragraph III certifications.  Ex. 4, June 11, 2020 Letter.  Instead, Plaintiffs hope that by forcing Sandoz to litigate now a 505(b)(2) product that is fraught with uncertainties, Plaintiffs can extract concessions from Sandoz that will foreclose the possibility that Sandoz may infringe any of Sanofi's patents for cabazitaxel even in the distant future.  This is not the purpose for which the Declaratory Judgment Act exists.  *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 412 (3d Cir. 1991) ("[O]ne of the primary purposes behind the Declaratory Judgment Act was to enable plaintiffs to preserve the status quo . . ., a case should not be considered justiciable unless 'the court is convinced that [by its action] a useful purpose will be served.'") (citation omitted); *Akzona, Inc. v. E.I. Du Pont de Nemours & Co.*, 662 F. Supp. 603, 616 (D. Del. 1987).

### B.     Counts I and III of Sanofi's Complaint Against Sandoz Should Be Dismissed for Failure to State a Claim under Fed. R. Civ. P. 12(c)

Counts I and III of Sanofi's Complaint should be dismissed for the additional reason that they fail to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(c).  As

discussed in Section IV.A.1 above, Sandoz has filed Paragraph III certifications for the '110 and '777 patents, which mean that the FDA cannot approve Sandoz's 505(b)(2) Application before the October 27, 2030 expiration of these patents. Section 271(e)(2) establishes a claim for infringement where a 505(b)(2) application is submitted for the purpose of obtaining approval "before the expiration of such patent." 35 U.S.C. § 271(e)(2)(A). Counts I and III allege infringement of the '110 and '777 patents under section 271(e)(2) and are not viable because Sandoz's Paragraph III certifications mean, as a matter of law, that the FDA cannot approve Sandoz's 505(b)(2) application "before the expiration of such patent[s], i.e., October 27, 2030." As such, Sanofi cannot maintain its claims that Sandoz infringes these patents under section 271(e)(2) and Counts I and III should be dismissed without prejudice.

The District of Delaware's recent dismissal in *H. Lundbeck A/S v. Apotex Inc.* is directly on point. In *H. Lundbeck*, the Court dismissed counts alleging infringement under 35 U.S.C. § 271(e)(2) where Sandoz had converted its Paragraph IV certifications for those patents to Paragraph III certifications. In granting Sandoz's motion to dismiss for failure to state a claim, the *Lundbeck* court rejected Plaintiffs' argument that Sandoz should be required to stipulate that it would not file a new Paragraph IV certification. *Lundbeck*, 2020 WL 3507795, at *5-6. The Court reasoned that Plaintiffs had already received the only remedy to which they were entitled under 35 U.S.C. § 271(e)(4) by virtue of Sandoz's amendment to a Paragraph III certification because the FDA could not approve Sandoz's ANDA until expiration of the patents. *Id.* at *5. The case for dismissal is even stronger here than in *Lundbeck* as Sandoz has ***never*** submitted a Paragraph IV certification for either of the patents-in-suit. The Court should not open the doors here for suits against Paragraph III certifiers just to satisfy Sanofi's desire to obtain a judgment with respect to Sandoz simultaneously with other companies.

## V.    CONCLUSION

For the foregoing reasons, Sandoz respectfully requests that this Court dismiss with prejudice Counts I-IV of Sanofi's First Amended Complaint.

HEYMAN ENERIO
GATTUSO & HIRZEL LLP

*/s/ Dominick T. Gattuso*
Dominick T. Gattuso (#3630)
300 Delaware Ave., Suite 200
Wilmington, DE 19801
Phone: (302) 472-7311
dgattuso@hegh.law

*Attorneys for Defendant Sandoz Inc.*

OF COUNSEL:

BRINKS GILSON & LIONE
Mark H. Remus
Laura A. Lydigsen
Joshua H. James
455 North Cityfront Plaza Drive, Suite 3600
Chicago, Illinois 60611-5599
Phone: (312) 321-4200
mremus@brinksgilson.com
llydigsen@brinksgilson.com
jjames@brinksgilson.com

GOODWIN PROCTER LLP
Daryl L. Wiesen
Emily Rapalino
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
dwiesen@goodwinlaw.com
erapalino@goodwinlaw.com

Aviv Zalcenstein

Tiffany Mahmood
Joel Broussard
620 Eighth Avenue
New York, NY 10018
(212) 813-8800
tmahmood@goodwinlaw.com
azalcenstein@goodwinlaw.com
jbroussard@goodwinlaw.com

Dated:  November 2, 2020