IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SANOFI-AVENTIS U.S. LLC and )
SANOFI MATURE IP, )
)
Plaintiffs, )
)
v. ) C.A. No. 20-804 (RGA)
) CONSOLIDATED
APOTEX CORP., et al., )
)
Defendants. )

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
FOR PATENT INFRINGEMENT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Morris, Nichols, Arsht & Tunnell LLP
Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
dfahnestock@morrisnichols.com

*Attorneys for Plaintiffs Sanofi-Aventis LLC
and Sanofi Mature IP*

OF COUNSEL:

William E. Solander
Daniel J. Minion
Whitney L. Meier
Katherine Adams
Venable LLP
1270 Avenue of the Americas, 24th Floor
New York, NY  10020
(212) 307-5500

Candice R. Jones
Venable LLP
600 Massachusetts Avenue, NW
Washington, DC  20001
(202) 344-4000

September 27, 2021

## TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS/SUMMARY OF ARGUMENT ..................................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

ARGUMENT ................................................................................................................ 4

I.  SANOFI IS NOT BARRED FROM ASSERTING THE AMENDED CLAIMS OF THE '592 PATENT ...................................................... 5

    A.  Defendants' Reexamination Cases Do Not Control Here ........................... 6

    B.  Defendants Misstate the Law of Claim Preclusion .................................... 6

    C.  Sanofi Has Plausibly Alleged Material Differences Between the Amended and Original Claims of the '592 Patent to Support a Claim for Relief ............................................. 9

    D.  Claim Preclusion Should Not Apply Here ............................................... 11

II.  SANOFI HAS STATED PLAUSIBLE CLAIMS FOR A DECLARATORY JUDGMENT  OF INDUCED INFRINGEMENT UNDER 35 U.S.C. § 271(B) .................................................. 14

    A.  Defendants' Motion Seeks Resolution of Disputed Issues of Material Fact ............................................................................................. 16

    B.  Defendants' Motion Raises a Claim Construction Dispute That Must Be Resolved ........................................................................... 19

CONCLUSION ........................................................................................................... 20

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. Cordis Corp.*,
  710 F.3d 1318 (Fed. Cir. 2013).................................................................6

*Acorda Therapeutics Inc. v. Apotex Inc.*,
  No. 07-4937, 2011 WL 4074116 (D.N.J. Sept. 6, 2011), *aff'd*, 476 F. App'x
  746 (Fed. Cir. June 11, 2012) ..............................................................19

*Aqua Prods. v. Matal*,
  872 F.3d 1290 (Fed. Cir. 2017) (*en banc*) ............................................12

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
  672 F.3d 1335 (Fed. Cir. 2012)................................................... *passim*

*AstraZeneca LP v. Apotex, Inc.*,
  633 F.3d 1042 (Fed. Cir. 2010)..........................................................15, 17

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................4

*Berndsen v. N.D. Univ. Sys.*,
  No. 19-2517, 7 F.4th 782 (8th Cir. Aug. 10, 2021) ..................................6

*Cardpool, Inc. v. Plastic Jungle, Inc.*,
  817 F.3d 1316 (Fed. Cir. 2016)................................................5, 8, 11, 13

*Click -To-Call Techs., LP v. Ingenio, Inc.*,
  899 F.3d 1321 (Fed. Cir. 2018), *vacated on other grounds sub nom. Thryv,
  Inc. v. Click-To-Call Techs., LP*, 140 S. Ct. 1367 (2020)...........................8

*Erickson v. Pardus*,
  551 U.S. 89 (2007).............................................................................4

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
  100 F. Supp. 3d 357 (D. Del. 2015)........................................................8

*Ferring Pharm. Inc. v. Lupin Inc.*,
  No. 19-913-RGA, 2020 WL 3414750 (D. Del. June 22, 2020)...................18

*Gillig v. Nike, Inc.*,
  602 F.3d 1354 (Fed. Cir. 2010).............................................................13

*Grunenthal GMBH v. Alkem Labs. Ltd.*,
  919 F.3d 1333 (Fed. Cir. 2019)..........................................................15, 16

*HZNP Meds. LLC v. Actavis Labs. UT, Inc.*,
  940 F.3d 680 (Fed. Cir. 2019)................................................................................18

*In re Lipitor Antitrust Litig.*,
  868 F.3d 231 (3d Cir. 2017)...................................................................................9

*Janssen Pharmaceutica, N.V. v. Apotex, Inc.*,
  540 F.3d 1353 (Fed. Cir. 2008).............................................................................13

*Lawlor v. Nat'l Screen Serv. Corp.*,
  349 U.S. 322 (1955)...............................................................................................13

*Mylan Labs. Ltd. v. Aventis Pharma S.A.*,
  No. IPR2016-00712, 2016 WL 5753968 (P.T.A.B. Sept. 22, 2016)..........................2, 3, 9, 11

*Mylan Labs. Ltd. v. Aventis Pharma S.A.*,
  No. IPR2016-00712, 2017 WL 4221400 (P.T.A.B. Sept. 21, 2017).........................2

*Mylan Labs. Ltd. v. Aventis Pharma S.A.*,
  No. IPR2016-00712, 2019 WL 5430242 (P.T.A.B. Oct. 22, 2019) .........................4

*Mylan Labs. Ltd. v. Sanofi Mature IP*,
  833 F. App'x 825 (Fed. Cir. Jan. 15, 2021) ...........................................................4, 9

*Nalco Co. v. Chem-Mod, LLC*,
  883 F.3d 1337 (Fed. Cir. 2018)..............................................................................11, 20

*Papera v. Pa. Quarried Bluestone Co.*,
  948 F.3d 607 (3d Cir. 2020)...................................................................................5

*Purdue Pharma L.P. v. Mylan Pharm. Inc.*,
  No. 15-1155-RGA-SRF, 2017 WL 784989 (D. Del. Mar. 1, 2017).........................11

*Sanofi Mature IP v. Mylan Labs. Ltd.*,
  757 F. App'x 988 (Fed. Cir. 2019) .........................................................................2, 4

*Sanofi v. Glenmark Pharm. Inc., USA*,
  204 F. Supp. 3d 665 (D. Del. 2016).......................................................................14

*Sanofi v. Watson Labs. Inc.*,
  875 F.3d 636 (Fed. Cir. 2017)................................................................................15

*Sanofi-Aventis U.S. LLC v. Dr. Reddy's Labs., Inc.*,
  933 F.3d 1367 (Fed. Cir. 2019)..............................................................................3

*Sanofi-Aventis U.S. LLC v. Fresenius Kabi USA, LLC*,
  No. 14-7869, 2016 WL 5898627 (D.N.J. Oct. 7, 2016) .........................................3

*Sanofi-Aventis U.S. LLC v. Fresenius Kabi USA, LLC*,
  No. 14-7869, 2018 WL 9364037 (D.N.J. Apr. 25, 2018)........................................3

*Scheuer v. Rhodes,*
    416 U.S. 232 (1974) ........................................................................4

*Senju Pharm. Co. v. Apotex Inc.,*
    746 F.3d 1344 (Fed. Cir. 2014) ................................................ *passim*

*Senju Pharm. Co. v. Lupin Ltd.,*
    780 F.3d 1337 (Fed. Cir. 2015) ........................................................9

*Senju Pharm. Co. v. Lupin Ltd.,*
    No. 11-271, 2013 WL 4101820 (D. Del. Aug. 9, 2013) ...........................9

*Shire LLC v. Amneal Pharm., LLC,*
    No. 11-3781, 2014 WL 2861430 (D.N.J. June 23, 2014) .......................19

*SimpleAir, Inc. v. Google LLC,*
    884 F.3d 1160 (Fed. Cir. 2018) ...................................................5, 11

*Takeda Pharms. U.S.A, Inc. v. West-Ward Pharm. Corp.,*
    785 F.3d 625 (Fed. Cir. 2015) ...................................................15, 16

*Target Training Int'l, Ltd. v. Extended Disc N. Am., Inc.,*
    645 F. App'x 1018 (Fed. Cir. Apr. 22, 2016) .....................................13

*Trujillo v. Landmark Media Enters., LLC,*
    689 F. App'x 176 (4th Cir. 2017) .....................................................6

**Rules and Statutes**

21 U.S.C. § 355(j)(5)(B)(iv) .................................................................13

35 U.S.C. § 101 .................................................................................8

35 U.S.C. § 271(b) .....................................................................1, 14, 15

35 U.S.C. § 316(a)(11) ........................................................................2

35 U.S.C. § 316(d) ............................................................................12

**Other Authorities**

37 C.F.R. § 42.101 (2012) ....................................................................6

H.R. REP. NO. 112-98, pt. I (2011) ........................................................12

*Hearing Before the Subcomm. on Courts, the Internet, and Intellectual Prop. of the H. Comm. on the Judiciary,* 108th .....................................................12

**NATURE AND STAGE OF THE PROCEEDINGS/SUMMARY OF ARGUMENT**

Plaintiffs Sanofi-Aventis U.S. LLC and Sanofi Mature IP ("Sanofi") oppose the Motion to Dismiss Sanofi's Second Amended Complaint (D.I. 252,[1] "MTD") of defendants Apotex Corp., Apotex Inc. ("Apotex"), and Sandoz Inc. ("Defendants").   With respect to U.S. Patent Nos. 10,583,110 ("'110 patent") and 10,716,777 ("'777 patent"), the MTD was filed more than a year after the same infringement allegations were presented in Sanofi's First Amended Complaint (D.I. 62) and after the completion of fact discovery, expert reports, and the deposition of Defendants' infringement expert.  *See* D.I. 66 at 10.

Defendants' MTD Counts V and VI for U.S. Patent No. 8,927,592 ("'592 patent") on claim preclusion grounds should be denied.   Although the MTD raises an issue of first impression regarding amended claims from an *inter partes* review ("IPR"), it relies on application of a bright line rule that the Federal Circuit has refused to apply for claim preclusion in other contexts.   There are material fact disputes raised by the Second Amended Complaint and claim construction issues regarding the amended claims that require resolution before claim preclusion can be evaluated. Defendants are not entitled to a judgment of claim preclusion as a matter of law.

Defendants' MTD on the issue of infringement for all Counts should also be denied.   The facts set forth in the Second Amended Complaint, when accepted as true and viewed in a light most favorable to Sanofi, demonstrate that Sanofi has stated plausible claims of induced infringement under 35 U.S.C. § 271(b).   None of the cases Defendants rely upon supports the notion that Sanofi's allegations of induced infringement can be resolved on the pleadings as a matter of law.   There are material fact disputes and claim construction issues that require resolution.   Accordingly, Defendants are not entitled to a judgment as a matter of law for failure

---

[1] Where not otherwise specified, D.I. refers to docket entries in Consolidated C.A. No. 20-804.

to state a claim of induced infringement.

## STATEMENT OF FACTS

Ten months after being served with a complaint in the District of New Jersey alleging infringement of the original claims of the '592 patent, Mylan Laboratories Limited ("Mylan") filed an IPR challenging all but one claim of that patent.  C.A. No. 15-3392, D.I. 1; C.A. No. 15-3392, D.I. 32.  The Patent Trial and Appeal Board ("PTAB") instituted that IPR in September 2016, meaning the final written decision would issue by September 2017, when trial in the New Jersey Action was scheduled.  35 U.S.C. § 316(a)(11); C.A. No. 15-3392, D.I. 37; C.A. No. 14-7869, D.I. 23.[2]  The PTAB had found the preamble language in independent claim 1 "method for treating a patient" and independent claim 27 "method of increasing the survival" nonlimiting.  *Mylan Labs. Ltd. v. Aventis Pharma S.A.*, No. IPR2016-00712, 2016 WL 5753968, at 3-5 (P.T.A.B. Sept. 22, 2016).  Thus, the only limitations of the claims were administering the drugs (cabazitaxel and a corticoid) to the specified patients.

In response to the PTAB's institution decision, Sanofi filed a contingent motion to amend claims 27-30 with substitute claims 31-34.  *Mylan Labs. Ltd. v. Aventis Pharma S.A.*, No. IPR2016-00712, 2017 WL 4221400, at *1, *27 (P.T.A.B. Sept. 21, 2017) ("*Mylan Labs. I*").  Sanofi sought to replace independent claim 27 with claim 31 (1) to make "increasing survival" in the preamble a claim limitation in accordance with a line of Federal Circuit decisions, and (2) to add a three-component premedication that was not disclosed in the prior art for cabazitaxel.  *Sanofi Mature IP v. Mylan Labs. Ltd.*, 757 F. App'x 988, 989-90, 992 (Fed. Cir. 2019).  In light of the likelihood of obtaining amended claims and for judicial economy, Sanofi moved to stay the New Jersey Action

---

[2] "New Jersey Action" as used herein refers to the litigation that was consolidated under C.A. No. 14-7869.

on the '592 patent while litigation proceeded on the also-asserted cabazitaxel compound patent. C.A. No. 14-7869, D.I. 136-1 at 2-4.  The defendants, including Apotex, opposed, and the court denied Sanofi's motion to stay.  *Id.*; C.A. No. 14-7869, D.I. 166.  The parties proceeded to trial.

During trial, the PTAB issued its final written decision finding the original '592 patent claims obvious and denying Sanofi's contingent motion to amend.  *Mylan Labs. I* at *13-14. Notably, because there were no survival limitations, the PTAB found that Mylan had proven by a preponderance of the evidence that a person of ordinary skill in the art ("POSA") would have been motivated to practice the claimed methods with a reasonable expectation of any anticancer activity for cabazitaxel.  *Id.* at *11-13.  For the amended claims, the PTAB again found the preamble term "increasing survival" nonlimiting, and therefore the obviousness analysis of the original claims with respect to anticancer activity still applied.  *Id.* at *29-31.  Sanofi appealed the PTAB's decision denying the motion to amend but not the decision regarding the original claims.

Subsequently, the district court in the New Jersey Action issued an opinion finding that Sanofi had proven infringement of asserted claims 21 and 30 of the '592 patent, but also finding those claims obvious for similar reasons as the PTAB under the same construction (no survival limitations).  *Sanofi-Aventis U.S. LLC v. Fresenius Kabi USA, LLC*, No. 14-7869, 2016 WL 5898627, at *6 (D.N.J. Oct. 7, 2016); *Sanofi-Aventis U.S. LLC v. Fresenius Kabi USA, LLC*, No. 14-7869, 2018 WL 9364037, at *28, 31-35 (D.N.J. Apr. 25, 2018).  Because the invalidity judgment for other original '592 patent claims was vacated by the Federal Circuit, the only judgment for the '592 patent is on claims 21 and 30, which Sanofi did not appeal.  *Sanofi-Aventis U.S. LLC v. Dr. Reddy's Labs., Inc.*, 933 F.3d 1367, 1370, 1374-75 (Fed. Cir. 2019).

The Federal Circuit ultimately vacated the denial of Sanofi's motion to amend in *Mylan Labs. I* because the PTAB had incorrectly construed the preamble language of independent claim

31 and placed the burden of proving patentability on Sanofi. *Sanofi Mature IP*, 757 F. App'x at 989. Importantly, the Federal Circuit found the preamble limiting and the "increasing survival" and "in need thereof" language in claim 31 (and dependent claims 32-34) required performance with the intentional purpose of increasing survival. *Id.* at 992-94.

On remand, the PTAB recognized that with the preamble limiting, Mylan was required to prove by a preponderance of the evidence that a POSA would have had a reasonable expectation that the claimed methods would result in increased survival, not merely anticancer activity. *Mylan Labs. Ltd. v. Aventis Pharma S.A.*, No. IPR2016-00712, 2019 WL 5430242, at *5-6 (P.T.A.B. Oct. 22, 2019) ("*Mylan Labs. II*"). The PTAB held that Mylan had failed to meet this burden and granted Sanofi's motion to amend. *Id.* at *2, *6-7. The Federal Circuit issued a Rule 36 affirmance, and the amended claims issued on August 23, 2021. *Mylan Labs. Ltd. v. Sanofi Mature IP*, 833 F. App'x 825 (Fed. Cir. Jan. 15, 2021); D.I. 248-1, Exhibit A at 24. These claims were asserted for the first time in Sanofi's Second Amended Complaint (D.I. 248) and are the subject of Defendants' MTD.

## ARGUMENT

To survive a motion to dismiss, a complaint must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support its claim." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court must accept the factual allegations in the complaint and take them in the light most favorable to the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Second Amended Complaint states plausible claims for relief.

## I.     **Sanofi Is Not Barred from Asserting the Amended Claims of the '592 Patent**

Defendants are not entitled to judgment as a matter of law that claim preclusion bars Sanofi from asserting the amended claims of the '592 patent.  Claim preclusion "invokes equity" and implicates policies of judicial economy and fairness to the parties.  *Cardpool, Inc. v. Plastic Jungle, Inc.*, 817 F.3d 1316, 1324 (Fed. Cir. 2016); *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1169 (Fed. Cir. 2018).  As such, it "is to be invoked only after careful inquiry."  *SimpleAir*, 884 F.3d at 1169.  Although claim preclusion is a question of law reviewed *de novo* on appeal, it depends on the underlying transactional facts.  *Senju Pharm. Co. v. Apotex Inc*., 746 F.3d 1344, 1348-49 (Fed. Cir. 2014) ("*Senju I*").  The party asserting that an action is barred has the burden of proving all elements of claim preclusion.  *Papera v. Pa. Quarried Bluestone Co*., 948 F.3d 607, 611 (3d Cir. 2020).

To Sanofi's knowledge, whether and how claim preclusion should be applied to amended claims from an IPR has not been decided by any court.  Contrary to Defendants' assertions, there is no bright line rule barring assertion of amended claims from an IPR proceeding based on a judgment on original claims.  As explained below, even applying the principles set forth in the cases Defendants rely upon, an inquiry into the differences between the original and amended claims is required.  Indeed, Defendants ignore the allegations in Sanofi's Second Amended Complaint setting forth material differences between the amended and original claims of the '592 patent.  Disputes about the materiality of the differences cannot be appropriately resolved at this stage without the benefit of claim construction and expert testimony.  Finally, Sanofi has not engaged in the type of gamesmanship noted in the cases Defendants rely upon, and indeed tried to avoid the present situation by moving for a stay that would have led to a single trial on the amended claims.  The defendants in the New Jersey Action, including Apotex, opposed the stay, leading to the need for a second proceeding.

## A.    Defendants' Reexamination Cases Do Not Control Here

Defendants do not cite, and Sanofi is not aware of, any case addressing whether amended claims from an IPR may be asserted against the same accused infringer after there has been a judgment on original claims.  Thus, the issue before the Court is one of first impression, which weighs against ruling at the pleadings stage without factual development through at least claim construction and expert reports.  *See Trujillo v. Landmark Media Enters., LLC*, 689 F. App'x 176, 178-179 (4th Cir. 2017) (reversing dismissal because novel issues of statutory interpretation were best assessed after factual development); *Berndsen v. N.D. Univ. Sys.*, No. 19-2517, 7 F.4th 782, 785 n.7 (8th Cir. Aug. 10, 2021) (noting that at least four circuit courts have cautioned against dismissal when a complaint raises novel legal issues).  *Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318 (Fed. Cir. 2013) does not support extending claim preclusion principles from reexaminations to IPRs.  Although the court stated that *inter partes* reexamination was replaced by IPR proceedings, the court found that there are differences between the two proceedings, including that depositions are available for an IPR but not for a reexamination.  *Id*. at 1326-27.  Indeed, reexamination and IPR differ in many ways, including that *ex-parte* reexamination can be initiated by the patentee, whereas an IPR cannot.  37 C.F.R. § 42.101 (2012).

## B.    Defendants Misstate the Law of Claim Preclusion

Defendants posit that after a judgment on original claims of a patent, narrower claims obtained through reexamination or IPR cannot be asserted against the same accused infringer no matter how the claims are altered or the basis for the earlier judgment.  MTD at 1.  That is not the law.  The Federal Circuit has rejected such a simplistic preclusion rule for reexamination, instead requiring consideration of the underlying facts, including the claims-at-issue.

In *Aspex Eyewear,* the Federal Circuit held that claim preclusion barred suit on claims emerging from reexamination when similar claims of the original patent had already been asserted

6

in prior litigation between the parties.  *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1340-41 (Fed. Cir. 2012).  Amended claim 23 (issued in reexamination) matched the original claim except for added limiting words that were "already implicit" in the original claim, and new reexamined claim 35 (dependent on amended claim 23) merely required "said magnet members" to be magnets.  *Id*. at 1341.  The court found there was no new cause of action because the differences from the original claims were "insignificant," "insubstantial," and did not affect whether the products at issue infringed, some of which had already been found in earlier litigation not to infringe certain claims.  *Id*. at 1338-39, 1341.  The court also reasoned that the patentee could have, but chose not to include original claim 23 in the first suit.  *Id*.

In *Senju I*, the patentee requested *ex parte* reexamination to amend claims only after those claims had been invalidated by a district court following full trial of a Hatch-Waxman infringement case.  746 F.3d at 1347.  The invalid original claims were directed to ophthalmic formulations of gatifloxacin with EDTA to improve passage of the gatifloxacin into the eye.  *Id*. at 1346-47.  The claims were amended during reexamination to specify the amount of gatifloxacin, the amount of EDTA, and the pH of the formulation.  *Id*. at 1347.  Because the reexamined claims were "essentially the original claims with limiting words added," the Federal Circuit found that the second case presented the same cause of action as the first, and that it was unnecessary to make a factually detailed determination as to whether the new claims were "materially different."  *Id*. at 1353.  The court also noted that Senju was seeking "a do-over," which is what the doctrine of claim preclusion "was designed to prevent."  *Id*.

Importantly, the Federal Circuit left open the possibility that reexamination could "result in the issuance of new patent claims that were so materially different from the original patent claims as to create a new cause of action, but at the same time were sufficiently narrow so as not

to violate the rule against reexamined claims being broader than the original claims." *Id*.  In the "absence of a clear showing that ***such a material difference in fact exists***," "***it can be assumed***" that no new cause of action will be created by a patentable claim that issued in reexamination. *Id.* (emphasis added).  Thus, the *Senju I* court did not adopt the bright line "narrower" rule Defendants seek to apply here. *See also Click -To-Call Techs., LP v. Ingenio, Inc.*, 899 F.3d 1321, 1336-37 (Fed. Cir. 2018) (discussing *Senju I* as assuming no new cause of action is created by reexamination without a clear showing that material differences exist), *vacated on other grounds sub nom. Thryv, Inc. v. Click-To-Call Techs., LP*, 140 S. Ct. 1367 (2020); *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 100 F. Supp. 3d 357, 364-67 (D. Del. 2015) (analyzing claim scope for material differences pursuant to *Senju I*).

Indeed, the Federal Circuit stated in *Cardpool* that a "district court's final judgment as to an original group of claims does not automatically render that judgment res judicata as to new claims granted upon reexamination." 817 F.3d at 1318.  Reexamination of a patent found invalid at the district court for claiming patent-ineligible subject matter was initiated by the patentee during appeal to the Federal Circuit, but completed (with amended and new claims) after the judgment had been affirmed on appeal. *Id.*  Both parties moved the district court to vacate its prior judgment to the extent the judgment was with prejudice, which the district court denied. *Id*. at 1318, 1320.  The patentee appealed the district court's refusal to vacate the dismissal with prejudice because it was concerned the 35 U.S.C. § 101 judgment would operate as res judicata going forward on the new reexamination claims. *Id*. at 1320-21.  The Federal Circuit affirmed the district court's discretionary denial to vacate. *Id*. at 1324.  The court also addressed the preclusion concerns raised by *Aspex Eyewear* and emphasized there were factual and equitable considerations to assess in the future before claim preclusion would apply. *Id*. at 1324.

C.      **Sanofi Has Plausibly Alleged Material Differences Between the Amended and Original Claims of the '592 Patent to Support a Claim for Relief**

According to *Senju I* and the other cases discussed above, for claim preclusion not to apply here, the patentee need only show that the amended claims are materially different from the original claims.  The Second Amended Complaint alleges just that: "Claims 31-34 of the '592 patent are materially different from and patentably distinct from all originally issued claims of the '592 patent (claims 1-30) because, among other things, claims 31-34 of the '592 patent require administration of cabazitaxel with the intentional purpose of prolonging survival and administration of a premedication regimen, neither of which was a limitation in any original issued claim of the '592 patent."  D.I. 248 at ¶ 82.  These are facially plausible factual allegations that should be viewed in the light most favorable to Sanofi.  *See In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249, 254, 260-61 (3d Cir. 2017) (only plausibility, not probability is required).

The materiality of the "increasing survival" component of the amended claims is supported by *Mylan Labs. II*.  The PTAB expressly relied on this difference in finding the amended claims patentable over all art and arguments raised by Mylan, including the same art that invalidated the original claims.  *Mylan Labs. II* at *6-9.  Thus, this changed claim language materially altered the question of obviousness, the basis for the final judgment for Defendants in the New Jersey Action, in Sanofi's favor.  The PTAB's nonobviousness determination for the amended claims of the '592 patent was upheld by the Federal Circuit.  *Mylan Labs. Ltd.*, 833 F. App'x 825.  This is in contrast to the reexamined patent in *Senju I*.  In another suit by Senju against different ANDA challengers, the reexamined claims were found obvious in view of the same primary references at issue in the initial case between Senju and Apotex.  *Senju Pharm. Co. v. Lupin Ltd.*, No. 11-271, 2013 WL 4101820, at *10 (D. Del. Aug. 9, 2013) (finding reexamined claims 12-16 obvious over '470, '456, and '465 patents); *Senju Pharm. Co. v. Lupin Ltd.*, 780 F.3d 1337, 1340, 1342-43, 1353 (Fed. Cir.

2015) (noting that the same '470, '456, and '465 patents were at issue in the earlier case). Thus, unlike the amendments to the '592 patent here, the amendments to the claims during reexamination in *Senju I* were not materially different enough to overcome an obviousness challenge on substantially the same art before the Federal Circuit.

In addition, unlike in *Senju I* and *Aspex Eyewear*, the three-component premedication required by the amended claims does not represent the mere addition of words that narrow existing aspects of the claims or make implicit limitations explicit. Rather, the three-component premedication is a distinct aspect of the invention disclosed in the '592 patent that was not previously claimed. Thus, the validity analysis for the amended claims will necessarily differ from that analysis for any original claim.

Even if *Senju I* requires considering whether the amended claims are narrower than the original invalidated claims, dismissal would be inappropriate here. A cabazitaxel product could infringe amended claims 31-33 of the '592 patent but not original claims 21 and 30 that were subject to a final judgment because those original claims are limited to a 20 mg/m$^2$ dose of cabazitaxel and claims 31-33 are not. D.I. 248-1, Exhibit A at 21-22, 24. In *Senju I*, the earlier judgment of invalidity was for claims 1-3 and 6-9 of the patent-at-issue. 746 F.3d at 1347. The reexamined claims that Senju then tried to assert in the second case were claim 6 (with narrowing amendments) and new claims 12-16. *Id.* New claim 12 was the other independent claim, and it was a narrower version of previously invalidated claim 1. *Id.* at 1347, 1353 n.2. Thus, in *Senju I*, all the reexamined claims were encompassed by the claims on which there had been a final judgment, which is not true here.

At a minimum, evaluating whether the amended claims of the '592 patent are materially different so as to support a new cause of action here requires analysis of the underlying

"transactional facts." *See SimpleAir*, 884 F.3d at 1165; *Senju I*, 746 F.3d at 1349. Such an analysis includes understanding the scope of the amended claims of the '592 patent, which is currently disputed, D.I. 236 at 4, and expert testimony as to how the altered scope of the claims impacts the obviousness basis for the final judgment in the New Jersey Action. These issues are not appropriate for resolution on the pleadings and require denial of Defendants' MTD. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018) (finding claim construction "is not suitable for resolution on a motion to dismiss"); *Purdue Pharma L.P. v. Mylan Pharm. Inc*., No. 15-1155-RGA-SRF, 2017 WL 784989, at *5, *9 (D. Del. Mar. 1, 2017) (denying motion to dismiss because the materiality of added limitations was a question of fact inappropriate for decision at that stage), R&R adopted by 2017 WL 2569604 (June 13, 2017).

### D.    Claim Preclusion Should Not Apply Here

The reexamination cases relied upon by Defendants should also not apply to the amended claims of the '592 patent because the equities are different here, and there was no decision to hold back the then not-assertable amended claims. *See Cardpool*, 817 F.3d at 1324 ("[T]he effect of a prior judgment rendered on specific issues as applied to the original claims, depends on the facts and issues of the reexamination, and invokes equity as well as law.").

First, the circumstances and equities that led to the *Senju I* result are not present here. Having pursued reexamination only after losing in the district court, Senju's second infringement case was an attempt at "a do-over" seeking "a second bite at the apple, to assert its patent against the same party, Apotex, and the same product." 746 F.3d at 1353. Here, in contrast, Mylan initiated the IPR relatively late in the litigation, which led to the *Mylan Labs. I* decision during trial. And it was Mylan and the other defendants, including Apotex, that refused to stay the litigation regarding the '592 patent, thereby forcing Sanofi to pursue litigation during the pendency of the IPR. Furthermore, Sanofi filed its motion to amend before the outcome of the New Jersey

11

Action. Thus, unlike in *Senju I*, Sanofi's motion to amend in the IPR was not seeking an improper second bite at the apple having already lost the initial case, but rather pursuing an opportunity expressly permitted in IPR proceedings by Congress, which was initiated before the first trial occurred. *See, e.g.*, 35 U.S.C. § 316(d).

Indeed, rather than gamesmanship, claim amendments are consistent with the legislative purpose of IPR proceedings, namely "to establish a more efficient and streamlined patent system that will ***improve patent quality*** . . . ." H.R. REP. NO. 112-98, pt. I, at 40 (2011) (emphasis added). In its statement to the Senate Committee on the Judiciary before Congress in 2004, the U.S. Patent and Trademark Office ("USPTO") explained that amendments are an important feature of post-grant proceedings: "By providing for the possibility of amendment of challenge[d] claims, the proposed system would preserve the merited benefits of patent claims better than the win-all or lose-all validity contests in District Court." *Patent Quality Improvement: Post-Grant Opposition*: *Hearing Before the Subcomm. on Courts, the Internet, and Intellectual Prop. of the H. Comm. on the Judiciary*, 108th Cong. 6 (2004) (statement of USPTO General Counsel James A. Toupin). And, as the Federal Circuit recognized, "Congress deemed the patent owner's right to amend so important that, in § 316(d), it mandated that the patent owner be permitted to amend the patent ***as of right*** at least once during the course of an IPR, provided certain specified statutory conditions were met." *Aqua Prods. v. Matal*, 872 F.3d 1290, 1299 (Fed. Cir. 2017) (*en banc*). To punish Sanofi for seeking valid new claims in response to Mylan's '592 IPR by preventing Sanofi from later asserting those claims against Defendants would undermine the IPR framework.

Furthermore, applying preclusion in this context is particularly prejudicial to owners of Orange Book-listed patents. Generic drug manufacturers have an incentive to file an ANDA and challenge the innovator's patents as early as possible to receive 180 days of generic marketing

exclusivity.  21 U.S.C. § 355(j)(5)(B)(iv); *Janssen Pharmaceutica, N.V. v. Apotex, Inc.*, 540 F.3d 1353, 1361-62 (Fed. Cir. 2008).  The 30-month stay of FDA-approval during which the parties are meant to resolve the litigation may make a district court inclined against staying litigation.  As a result, it is highly unlikely that a certificate on amended claims from an IPR can be issued before final judgment is entered at the district court.  If claim preclusion were applied here, any time an ANDA applicant who has been sued for infringement files an IPR, and the patentee responds with a motion to amend, the amended claims could be asserted only against later ANDA filers who had not participated in the first round of litigation.  This eliminates much of the benefit of amending patents in an IPR where there is ongoing ANDA litigation.

Second, unlike in *Aspex Eyewear*, there was no deliberate decision here not to assert the amended claims of the '592 patent in the New Jersey Action, and therefore no similar claim splitting.  *See Aspex Eyewear*, 672 F.3d at 1340-41; *see also Cardpool*, 817 F.3d at 1324 (discussing *Aspex Eyewear* as requiring that the claim could have been asserted in the earlier action).  The amended claims of the '592 patent did not exist when the New Jersey Action regarding that patent was filed, and they still had not been granted when the action completed.  The Federal Circuit has repeatedly held that claim preclusion does not bar litigation on rights acquired during the course of a litigation that did not exist when the original suit was filed.  *See, e.g*., *Target Training Int'l, Ltd. v. Extended Disc N. Am., Inc.,* 645 F. App'x 1018, 1025-26 (Fed. Cir. Apr. 22, 2016) (discussing why claim preclusion would not apply to reexamined claims, including (1) there had been no merits judgment, and (2) preclusion "does not apply to bar the assertion of new claims acquired during the pendency of a litigation"); *Gillig v. Nike, Inc*., 602 F.3d 1354, 1363 (Fed. Cir. 2010) ("[T]he doctrine of res judicata does not punish a plaintiff for exercising the option not to supplement the pleadings with an after-acquired claim." (citation omitted)); *see also Lawlor v.*

13

*Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955) (noting that an earlier judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case").

## II.  Sanofi Has Stated Plausible Claims for a Declaratory Judgment of Induced Infringement Under 35 U.S.C. § 271(b)

Sanofi's Second Amended Complaint includes allegations that, when accepted as true and viewed in a light most favorable to Sanofi, plausibly demonstrate that Defendants will induce infringement of the '110, '777, and '592 patents by marketing their proposed cabazitaxel products with a label that will instruct and encourage physicians to practice the claimed methods of those patents. D.I. 248 at ¶¶ 87-159. This Court should not deny Sanofi the opportunity to offer evidence at trial to support these allegations. This is especially true here where fact and expert discovery on the issue of infringement of the '110 and '777 patents have been largely completed. The fact that the parties already exchanged dueling expert reports on infringement of these patents demonstrates that there are triable, disputed issues of fact.

Defendants set forth two related bases for their assertion that no further discovery or trial are necessary. Both are legally incorrect. First, Defendants assert increasing survival "[a]t best . . . represent[s] a subset of the potential approved uses for cabazitaxel that are covered by its indication," as the indication for cabazitaxel is "treatment." MTD at 13-14. Defendants further note that their "proposed labels do not require that physicians administer Defendants' cabazitaxel products with the intention of increasing survival." *Id*. at 17. As this Court has correctly observed, however, "the law does not require that a label expressly limit a drug only to a specific use in order to induce infringement of a method of treatment claim. The label must merely 'encourage, recommend, or promote' an infringing use." *Sanofi v. Glenmark Pharm. Inc., USA*, 204 F. Supp. 3d 665, 680 (D. Del. 2016) (citation omitted).

14

Second, Defendants assert that Sanofi has no claim for induced infringement "as a matter of law" because "[s]ome physicians . . . may follow Defendants' labels and administer Defendants' cabazitaxel products to patients not with any intention of increasing survival . . . ."  MTD at 20. The Federal Circuit has repeatedly rejected such arguments, holding that "there is no legal or logical basis for the suggested limitation on inducement [that a district court cannot permissibly find intent to encourage infringing uses when there are substantial noninfringing uses].  Section 271(b), on inducement, does not contain the 'substantial noninfringing use' restriction of section 271(c), on contributory infringement."  *Sanofi v. Watson Labs. Inc.*, 875 F.3d 636, 646 (Fed. Cir. 2017); *see also AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1060 (Fed. Cir. 2010) ("Even if [Defendant] were correct that the [language in the label] may be applied to other dosing regimens, the language . . . would inevitably lead some consumers to practice the claimed method.").

Defendants' cited cases do not support their argument on either point.  In both *Grunenthal* and *Takeda*, the generic manufacturers sought approval solely for FDA-approved uses that were not covered by an existing patent.  *Grunenthal GMBH v. Alkem Labs. Ltd.*, 919 F.3d 1333, 1339-40 (Fed. Cir. 2019); *Takeda Pharms. U.S.A, Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 629-30 (Fed. Cir. 2015).  Defendants emphasize the *Grunenthal* court's comment that "it is undisputed that neither of the accused ANDA labels list an indication for the management of pain associated with DPN" to suggest that the absence of "increasing survival" language in the indication is "dispositive."  MTD at 13-14.  However, the *Grunenthal* court did not focus solely on the language of the indication.  The more important finding was that the proposed labels also did not "mention any DPN clinical studies, which served as the basis for FDA approval of NUCYNTA®."  919 F.3d at 1339-40.  In other words, there was no data in the proposed labels directed to the patented use. *Id.*  Likewise, in *Takeda*, the generic manufacturer sought approval for a drug to be used as a

15

prophylaxis of gout flares with a label that included no data and only vague language regarding the patented, off-label use of the drug for acute gout flares. 785 F.3d at 628-29. The court held that vague language was insufficient to support a finding of inducement. *Id.* at 630.

Physicians' treatment decisions are primarily driven by clinical study data. In *Grunenthal* and *Takeda*, there was an absence of any data that would impact those decisions or otherwise encourage physicians to use the defendants' products in an infringing way. *Grunenthal*, 919 F.3d at 1339–40; *Takeda*, 785 F.3d at 629-30. Here, in contrast, Defendants' proposed labels not only disclose, but highlight, the relevant survival data from the TROPIC study that served as the basis for FDA approval of Jevtana® (cabazitaxel) and the claimed methods. *See, e.g.*, D.I. 248-1, Exhibit D at Sections 2.1, 14. As explained below and as alleged in the Second Amended Complaint, the presentation of this data in Defendants' proposed labels will encourage and inevitably lead physicians to administer cabazitaxel to patients according to the claimed methods with the intent of prolonging those patients' lives.[3] D.I. 248 at ¶¶ 87-159. These allegations, accepted as true and viewed in a light most favorable to Sanofi, state plausible induced infringement claims.

### A.    Defendants' Motion Seeks Resolution of Disputed Issues of Material Fact

Sanofi submits that there should be no reasonable dispute that Defendants' proposed labels encourage the use of their products according to the claimed methods and that Defendants intend that those products be used as such. At a minimum, however, there are material issues of fact in

---

[3] There is no dispute—or at least there should not be at trial—that Defendants' proposed labels instruct the administration of Defendants' cabazitaxel products according to the claimed methods (i.e., administering the claimed dosage of cabazitaxel, to a patient with the particular type of prostate cancer claimed, and following the claimed premedication(s)). Thus, the dispute here essentially boils down to whether Defendants' proposed label encourages the practice of those claimed methods with the intent of increasing survival.

play regarding how physicians will be influenced by Defendants' proposed labels that preclude this Court from granting Defendants' MTD.

Specifically, the parties dispute how a physician will interpret the clinical study data presented in Defendants' proposed labels and the significance of that data. Defendants understate the significance of this data by suggesting that its import will somehow be lost on treating physicians because there is no "mention of 'increasing survival.'" MTD at 15. As an initial matter, the fact that Defendants' proposed labels contain nothing "actually discussing the data or characterizing it as showing an increase in survival for the cabazitaxel+prednisone arm of the study" is not relevant from a legal standpoint. *Id*. at 19. Inducement can be established even when the patented use is not expressly stated in the proposed labels. *See, e.g.*, *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1056-61 (Fed. Cir. 2010) (holding that statements in the Dosage and Administration and Precautions sections of the label would inevitably lead some users to practice the patented once-daily use despite the absence of any infringement-inducing language in the Indication section). And, there certainly is no legal requirement that the presentation of clinical data or results in a proposed product label be in "discussion" form for it to encourage infringement.

Second, Sanofi disputes that Table 5 and Figure 1, as Defendants allege, "merely present data on overall survival in two patient populations." MTD at 15. It is easy to recognize the difference between the overall survival curves in Figure 1 with an increase in survival in the cabazitaxel arm without the need for any explicit specific characterization of that data. Defendants' proposed labels also report this difference in overall survival as the median time to death for the patients in each study arm , provide a "p value" for the difference, and report a hazard ratio of 0.70, explicitly noting that it favors cabazitaxel (Table 5 excerpted from D.I. 248-1, Exhibit D at Section 14.1. below):

**Table 5: Efficacy of JEVTANA in TROPIC in the Treatment of Patients with Metastatic Castration-Resistant Prostate Cancer (intent-to-treat analysis)**

|  | JEVTANA + Prednisone n=378 | Mitoxantrone + Prednisone n=377 |
|---|---|---|
| **Overall Survival** | | |
| Number of deaths (%) | 234 (61.9 %) | 279 (74.0%) |
| Median survival (month) (95% CI) | 15.1 (14.1-16.3) | 12.7 (11.6-13.7) |
| Hazard Ratio* (95% CI) | 0.70 (0.59-0.83) | |
| p-value | <0.0001 | |

* Hazard ratio estimated using Cox model; a hazard ratio of less than 1 favors JEVTANA.

Sanofi disputes Defendants' suggestion that a physician reviewing these results in Table 5 of Defendants' proposed labels would not conclude that there was a statistically significant increase in overall survival, corresponding to a 30% reduction in risk of death, for cabazitaxel as compared to mitoxantrone without being explicitly told so.[4]  MTD at 15.

Sanofi also disputes Defendants' assertion that the TROPIC results are "neutral" with respect to increasing survival.  *Id*. at 19.  As shown above, the survival advantage for cabazitaxel is clear.  A treatment shown to increase overall survival in a controlled clinical study is understood as prolonging life (i.e., increasing the life expectancy) of individual patients as compared to those patients receiving the control arm therapy from the clinical study.  In other words, a finding of increased overall survival in a clinical study, as is true for the TROPIC study presented in Defendants' labels, demonstrates that the therapy will prolong the life of individual patients.

Last, Sanofi disputes Defendants' assertions that the evidence here merely "establishes that some users might infringe," *HZNP Meds. LLC v. Actavis Labs. UT, Inc.*, 940 F.3d 680, 702 (Fed. Cir. 2019), or that their proposed labels "may permit an infringing use," *Ferring Pharm. Inc. v.*

---

[4] Sanofi disputes that the additional tumor response data is of any consequence.  Counsel for Defendants' conclusory statement at the *Markman* hearing does not constitute evidence that any physician reading Defendants' proposed labels would administer their proposed products to "shrink tumors," "reduce pain," or "lower PSA."  MTD at 20.

*Lupin Inc.*, No. 19-913-RGA, 2020 WL 3414750, at *4 (D. Del. June 22, 2020).[5]  Patients to whom Defendants' proposed products are directed have progressive, terminal prostate cancer and, therefore, are clearly in need of a treatment method that will prolong their lives.  Defendants intend to provide physicians with a label presenting data demonstrating that their products prolong those patients' lives over receiving palliative mitoxantrone therapy.  As alleged in the Second Amended Complaint, this will inevitably cause at least some physicians to administer cabazitaxel to those patients with the intent of prolonging their lives.  *See, e.g.*, D.I. 248 at ¶¶ 91-92.  Thus, the presentation of these results goes beyond knowledge that Defendants' products "may" be put to infringing use and constitutes active inducement by Defendants.

## B.   Defendants' Motion Raises a Claim Construction Dispute That Must Be Resolved

Defendants' arguments raise another disputed issue that must be resolved.  Specifically, Defendants allege that the TROPIC clinical study data presented in their proposed labels does not "concern[] the comparison required by the claims," wrongly suggesting that this was a finding by the Court.  MTD at 19.  The Court did not find that administering cabazitaxel with the intent of increasing survival versus mitoxantrone and prednisone falls outside of the claims; rather, the Court found the opposite, i.e., that the specification did not support Sanofi's proposed construction that the claims cover increasing survival (in the particular context of prolonging the lifespan of a patient[6]) as compared to no treatment or palliative treatments other than mitoxantrone that likewise

---

[5] *Acorda Therapeutics Inc. v. Apotex Inc.*, No. 07-4937, 2011 WL 4074116 (D.N.J. Sept. 6, 2011), *aff'd*, 476 F. App'x 746 (Fed. Cir. June 11, 2012) and *Shire LLC v. Amneal Pharm., LLC,* No. 11-3781, 2014 WL 2861430 (D.N.J. June 23, 2014) are not in any way factually analogous and are not controlling authority.

[6] To be clear, Sanofi has never advocated that the proper comparison for increasing survival in the claims should be anything other than mitoxantrone and prednisone (the specific control arm used in the TROPIC study) for a construction of "increasing survival" that includes progression-free survival endpoints.

do not increase overall survival.  D.I. 209, *Markman* Op. at 7-8.

Indeed, at the *Markman* hearing in this case, Defendants' counsel objected to the use of any comparator outside of the specific control arm in the TROPIC study noting that "[t]he only comparison that was ever made was between the Cabazitaxel arm of the study and the control arm of Mitoxantrone" and that any other comparator "is without basis in the patent anywhere." D.I. 205, *Markman* Hr'g Tr. at 37.  Moreover, Defendants' noninfringement expert agreed at deposition that the term "increasing survival" requires a comparator, which for the asserted claims is mitoxantrone as demonstrated in the TROPIC study.  Mar. 26, 2021 Stadler Dep. Tr. at 139:10-141:4, attached hereto as Exhibit 1.

In any event, there clearly appears to be a dispute as to the meaning and scope of the asserted claims that requires resolution.  Such a dispute "is not suitable for resolution on a motion to dismiss."  *Nalco Co.*, 883 F.3d at 1349.

## **CONCLUSION**

For the foregoing reasons, Sanofi respectfully requests that the Court deny Defendants' MTD.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Derek J. Fahnestock*

_____

OF COUNSEL:

William E. Solander
Daniel J. Minion
Whitney L. Meier
Katherine Adams
VENABLE LLP
1270 Avenue of the Americas, 24th Floor
New York, NY  10020
(212) 307-5500

Candice R. Jones
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC  20001
(202) 344-4000

September 27, 2021

Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
dfahnestock@morrisnichols.com

*Attorneys for Plaintiffs Sanofi-Aventis LLC
and Sanofi Mature IP*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 27, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 27, 2021, upon the following in the manner indicated:

John C. Phillips, Jr., Esquire                                          *VIA ELECTRONIC MAIL*
Megan C. Haney, Esquire
PHILLIPS, MCLAUGHLIN, & HALL, P.A.
1200 North Broom Street
Wilmington, DE  19806
*Attorneys for Defendants Apotex Corp. and*
*Apotex Inc.*

Derek B. Lavender, Esquire                                          *VIA ELECTRONIC MAIL*
TAFT STETTINIUS & HOLLISTER LLP
1 Indiana Square
Indianapolis, IN  46204
*Attorneys for Defendants Apotex Corp. and*
*Apotex Inc.*

Andrew M. Alul, Esquire                                          *VIA ELECTRONIC MAIL*
Richard R. Ruzich, Esquire
Stephen R. Auten, Esquire
Roshan P. Shrestha, Esquire
Ian Scott, Esquire
TAFT STETTINNIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, IL  60601-3713
*Attorneys for Defendants Apotex Corp. and*
*Apotex Inc.*

Aaron M. Johnson, Esquire                                          *VIA ELECTRONIC MAIL*
TAFT STETTINIUS & HOLLISTER LLP
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
*Attorneys for Defendants Apotex Corp. and*
*Apotex Inc.*

Dominick T. Gattuso, Esquire                                    *VIA ELECTRONIC MAIL*
HEYMAN ENERIO GATTUSO & HIRZEL LLP
300 Delaware Avenue, Suite 200
Wilmington, DE  19801
*Attorneys for Defendant Sandoz Inc.*

Daryl L. Wiesen, Esquire                                        *VIA ELECTRONIC MAIL*
Emily Rapalino, Esquire
Kevin J. DeJong, Esquire
Tara R. Melillo, Esquire
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA  02210
*Attorneys for Defendant Sandoz Inc.*

Tiffany Mahmood, Esquire                                        *VIA ELECTRONIC MAIL*
Joel Broussard, Esquire
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY  10018
*Attorneys for Defendan Sandoz Inc.*

Laura A. Lydigsen, Esquire                                      *VIA ELECTRONIC MAIL*
Mark H. Remus, Esquire
Joshua James, Esquire
CROWELL & MORING
455 North Cityfront Plaza Dr., Suite 3600
Chicago, IL  60611-5599
*Attorneys for Defendant Sandoz Inc.*


                                   */s/ Derek J. Fahnestock*
                                   _____
                                   Derek J. Fahnestock (#4705)